434 So.2d 1193 (1983)
David A. DUHE
v.
MARYLAND CASUALTY COMPANY, et al.
No. 82 CA 0948.
Court of Appeal of Louisiana, First Circuit.
June 28, 1983.
*1194 Robert D. Downing, Baton Rouge, for plaintiff-appellant David A. Duhe.
Richard Creed, Jr., Baton Rouge, for defendant-appellee Aetna Cas. & Sur. Co.
John S. White, Jr., Baton Rouge, for defendant-appellee Maryland Cas. Co.
Before LOTTINGER, COLE and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment dismissing Aetna Casualty and Surety Company from liability as an excess uninsured motorist carrier.[1]
Plaintiff, David A. Duhe, filed a suit for personal injuries resulting from a two vehicle collision which occurred on February 25, 1981, on U.S. Highway 190 in West Baton Rouge Parish. Duhe was driving a vehicle owned by Henry Allen when a vehicle owned and operated by Ervin Antoine[2] collided with plaintiff after failing to negotiate a lane change. Named as defendants were: 1) Maryland Casualty Company, Allen's liability and uninsured motorist insurer; and 2) Aetna Casualty and Surety Company, plaintiff's liability and uninsured motorist insurer.
Prior to trial, the limits of the uninsured motorist (UM) coverage provided by Maryland Casualty Company was disputed. Maryland Casualty Company asserted that UM coverage under the policy issued to Allen was $5,000.00. Duhe contended that the owner of the truck which he operated had not selected lower limits of UM coverage, and, therefore, the UM coverage under the Maryland policy, required by LSA-R.S. 22:1406(D)(1)(a)[3], was the same as its liability limits, or $100,000. Duhe, however, settled with Maryland Casualty prior to trial on the merits for $10,000, and Maryland *1195 Casualty was dismissed from the suit. This proceeding now only involves an attempt by plaintiff to recover against Aetna Casualty and Surety Company under his own UM insurance policy.
The trial judge found that Maryland Casualty Company provided plaintiff $100,000 UM coverage because the owner of the vehicle plaintiff operated did not specifically select lower limits of UM coverage in writing. In effect, the trial court held that Maryland's unilateral attempt to limit UM coverage by a provision in the policy stating limits of $5,000/$10,000 was ineffective and contrary to LSA-R.S. 22:1406(D)(1)(a). The trial judge thus found that since plaintiff's injuries did not exceed the $100,000 UM coverage provided by Maryland Casualty, plaintiff's suit was dismissed. From this ruling, plaintiff has perfected a devolutive appeal.
Under Louisiana law, UM coverage is provided for by statute and embodies a strong public policy. Therefore, the question of UM coverage must be determined in light of LSA-R.S. 22:1406. This statute has been amended several times with regard to the right to reject coverage or select lower limits and the form and effect of such rejection or selection.
Act 438 of 1977[4] attempted to clarify the law with respect to the form of rejection or selection of lower limits. Thus, for the first time, the statute contained a requirement that rejection of coverage or selection of lower limits be in writing. A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981).
LSA-R.S. 22:1406 mandates the inclusion of UM coverage in any automobile liability policy delivered or issued for delivery in this state. Coverage is required in limits not less than the limits of bodily injury liability provided in the policy unless the insured selects lower limits.
In the present case, Allen's $100,000/$300,000 bodily injury liability policy issued by Maryland Casualty only provided for UM coverage of $5,000 per person and $10,000 per accident.
The lower limits provided in the policy can have no effect because coverage is required and must be read into the policy by the terms of the statute. Since Maryland apparently attempted to unilaterally provide lower limits, this conflicted with the coverage required by law. Any such selection of lower limits was required to be in writing and attached to the policy.[5]A.I.I. Ins. Co. v. Roberts, supra.
The trial court found, and we agree, that there is nothing in writing (which we interpret to mean a written instrument signed by the insured) annexed to the policy that could conceivably be considered an affirmative act by the insured which shows his intent to select lower limits of UM coverage in the policy issued by Maryland Casualty Company.
This court in Johnson v. Ortego, 408 So.2d 397 (La.App. 1st Cir.1981), upheld a written indorsement signed by the insured rejecting UM coverage and considered it to be a waiver of uninsured motorist coverage, underinsured motorist coverage, and an exercise of the option to select lower limits. In Johnson, there was no question of knowledge and affirmative action on the part of the insured regarding the options to modify UM coverage. Therefore, it is clear that to constitute a valid waiver of UM coverage or selection of lower limits, the waiver must be in writing and signed by the insured. Absent this affirmative act on the part of the insured, UM coverage is identical to the bodily injury liability limits provided in his policy.
In the present case, the trial court found that Allen's uninsured motorist coverage was $100,000, and not $5,000 as provided in the policy. We agree.
Plaintiff contends that, by the terms of the Aetna policy, Aetna should have been given a credit only for the amount actually *1196 paid by Maryland Casualty ($10,000). Plaintiff relies specifically on two provisions of the Aetna policy:
"Protection Against Uninsured Motorist
* * * * * *
Limits of Liability
* * * * * *
(b) Any amount payable under terms of this Coverage because of bodily injury sustained in an accident by a person who is an Insured under this Coverage shall be reduced by
(1) all sums paid on account of such bodily injury by or on behalf of (i) the owner or operator of the uninsured automobile and (ii) any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under the Liability Coverage, and
(2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law, disability benefits law or any similar law, ..."
Plaintiff argues that the insurer has chosen to provide that only amounts actually received by the insured shall be used to reduce coverage.
However, under "Protection Against Uninsured Motorist", "Other Insurance", the Aetna policy provides:
"With respect to bodily injury to an Insured while occupying an automobile not owned by the named Insured, the insurance under the Uninsured Motorist Coverage shall apply only as excess insurance over any other similar insurance available to such Insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance."
This clause clearly provides that Aetna's coverage is not applicable until the insured's damages exceed the limits of the primary uninsured motorist coverage.
Act 623 of 1977 amended LSA-R.S. 22:1406 to add the following language now found in § 1406(D)(1)(c):
"If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
"With respect of bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
"(i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
"(ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant."
The purpose of this Act was to prevent "stacking" of uninsured/underinsured motorist insurance policies and coverage, which had been allowed by the jurisprudence prior to the amendment. See Branch v. O'Brien, 396 So.2d 1372 (La.App. 2d Cir. 1981), writ denied, 400 So.2d 905 (La.1981), and cases cited therein. According to the Supreme Court in Courville v. State Farm Mut. Auto. Ins. Co., 393 So.2d 703, 705 (La.1981), "the first paragraph of the Act provides the general rule that an insured who has insurance available to him under more than one uninsured motorist policy *1197 may not stack, ..." subject to a limited exception in the Act which was found to be applicable in the Courville case. This exception applies, and UM coverage may be stacked, when: "(1) the injured party is occupying an automobile not owned by him; (2) the U-M coverage on the vehicle in which the injured party was an occupant is primary; and (3) should that primary U-M coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other U-M coverage available to him." Nall v. State Farm Mat. Auto. Ins. Co., 398 So.2d 201 (La.App. 3rd Cir.1981), writ granted, 400 So.2d 1390 (La. 1981), affirmed, 406 So.2d 216, 218 (La. 1981).
Applying these guidelines to the present case, we find that plaintiff was an occupant of a vehicle which he did not own when he was injured. Furthermore, the UM coverage on the vehicle in which plaintiff was an occupant was primary. The third of the above requirements, however, is absent. The primary UM coverage was not "exhausted due to the extent of damages," and as a result, the injured occupant may not recover as excess from other uninsured motorist coverage available to him. LSA-R.S. 22:1406(D)(1)(c) ii.
The trial court correctly determined that coverage allowed by the insurer of the tortfeasor ($10,000), in addition to the coverage allowed by Maryland Casualty ($100,000 limit), was far in excess of the amount that this plaintiff could recover had this case gone to trial, and that Aetna, therefore, could not be liable as an excess uninsured motorist insurer. It is unfortunate that Duhe chose to settle his claim with Maryland Casualty for only $10,000, but he can not now claim that the primary UM coverage is "exhausted" in order to avail himself of the uninsured motorist coverage in his policy with Aetna.
Aetna's UM coverage is not available to plaintiff because he has not exhausted the primary UM coverage provided by Maryland Casualty Company. Therefore, we find plaintiff's contention that under its UM coverage, Aetna should only be allowed a credit for amounts which were actually paid and not for potential coverage available under other uninsured motorist coverage, without merit.
For the above reasons, the judgment of the district court is affirmed. Plaintiff is to bear the costs of this appeal.
AFFIRMED.
NOTES
[1] Reference to "uninsured motorist coverage" in this opinion refers to "uninsured or underinsured motorist coverage."
[2] Plaintiff settled with the liability insurer of the tortfeasor prior to trial for the policy limits of $10,000.
[3] Act 438 of 1977 amended LSA-R.S. 22:1406(D)(1)(a) to provide that:

"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."
[4] Ibid.
[5] The written rejection or selection of lower limits, however, does not have to be physically attached to the policy upon each renewal. Cooper v. Barnes, 408 So.2d 378 (La.App. 1st Cir.1981).