604 So.2d 199 (1992)
James H. YOUNG, Plaintiff/Appellant,
v.
SHELTER INSURANCE COMPANY, Defendant/Appellee.
No. 23642-CA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1992.
Writ Denied November 20, 1992.
O'Neal Law Offices by Hodge O'Neal, III and Jay A. Pucheu, Monroe, for plaintiff/appellant.
Hudson, Potts & Bernstein by W. Lee Perkins, Jr., Monroe, for defendant/appellee.
Before SEXTON, NORRIS, LINDSAY, HIGHTOWER and VICTORY, JJ.
NORRIS, Judge.
Appellant James H. Young was injured in an automobile accident allegedly caused *200 by an uninsured motorist. Young and his wife sued their insurer, appellee Shelter Insurance Co., alleging uninsured motorist coverage under their policy, and also sued the alleged tortfeasor and her parents. Shelter answered, contending under its policy it was liable only for $10,000 in UM coverage, which had been paid; Shelter also filed a third party demand against the other defendants. Apparently Shelter also sued these parties in a separate suit. The two suits were later consolidated. A motion to sever these individual defendants was subsequently granted due to service difficulties. Shelter then moved for summary judgment, urging the Youngs selected UM limits lower than liability coverage. The motion was granted. The Youngs now appeal, contending that there was no valid selection of lower limits in accordance with statutory and jurisprudential guidelines. We find that an issue of material fact exists rendering summary judgment inappropriate; accordingly, we reverse and remand.

DISCUSSION
The accident which gave rise to these proceedings occurred in January 1988, one week after Mr. Young signed an automobile insurance application. This application reflects bodily injury liability limits of $100,000/$300,000/$50,000, medical payment limits of $2000, and uninsured motorist ("UM") coverage of $10,000/$20,000. After the accident, Shelter paid the Youngs $2000 in medical payments and $10,000 in UM coverage.
The Youngs urge that in the absence of a valid selection of lower limits, Shelter was obligated, "by operation of law," to provide UM coverage equal to the policy's bodily injury liability coverage. La.R.S. 22:1406D(1)(a) requires the insurer to provide UM coverage equal to bodily injury liability coverage unless the insured rejects UM coverage or selects lower limits; the rejection or selection of lower limits must be made in writing on a form provided by the insurer and approved by the Commissioner of Insurance and signed by the insured.
Shelter's single-page, two-sided application was approved by the Commissioner of Insurance in December 1987, R.p. 66, and contains a purported selection of lower UM limits. Young does not dispute that the signature on the back of the application is his. Thus, the statutory requirements of a signed form prepared by the insurer and approved by the Commissioner are satisfied. Giroir v. Theriot, 513 So.2d 1166 (La.1987); Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). However, because the statute reflects a strong public policy favoring UM coverage, any exception to such coverage, including selection of lower limits, must be affirmatively expressed by the insured "clearly, unambiguously and unmistakably[.]" Henson v. Safeco Ins. Companies, 585 So.2d 534, 538 (La.1991); Giroir v. Theriot, supra. Evidence of the mere signing of an application form previously completed by the insurer does not, in and of itself, prove an affirmative act of rejection of UM coverage or selection of lower limits; the insurer must prove that a selection of lower limits has been legally perfected. Henson, supra, and citations therein.
The front of Shelter's "Automobile Insurance Application" provides blank spaces where the amounts of coverage desired by the applicant may be inserted. Rev. Young's application shows that coverage amounts referred to above were handwritten into three of these blanks: those corresponding to bodily injury liability, medical payments and UM coverage. UM coverage is further addressed on the back of the application, in a section titled "Applicant's Statement." Question # 9 asks if the applicant wants uninsured motorist coverage. The blank next to this question contains the handwritten word "yes." The next question reads: "Do you want uninsured motorist limits equal to Bodily Injury limits?" The answer written in by this question is "No." Immediately below this set of questions is a statement which reads: "NOTE: The coverages shown on the front side should coincide with these answers." The only signature line for the insured is on the back, adjacent to this "Note."
*201 Summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Watson v. Cook, 427 So.2d 1312 (La.App. 2d Cir.1983). The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La.App. 1st Cir.), writ denied 403 So.2d 68 (1981). To satisfy his burden, the movant must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the moving party are to be closely scrutinized while opposing papers are to be indulgently treated, in determining whether the mover has met his burden. Vermilion Corp. v. Vaughn, supra. Summary judgment may not be granted even if the trial court has grave doubts as to a party's ability to establish disputed facts. Watson v. Cook, supra.
In Henson, supra, the supreme court found that the insurer presented an already completed application to the insured, who merely glanced at it before affixing his signature. In so doing, the insurer "attempted to set up an automatic rejection of UM coverage and thus require [the insured] to affirmatively change the form in order to obtain UM coverage." 585 So.2d at 539 (emphasis in original). The court further stated, "Henson's merely signing the general application for insurance unambiguously signified only the intent to obtain an insurance policy." Thus, the insurer did not prove a valid rejection of UM coverage.
Among the documents submitted by Shelter in support of its motion for summary judgment is the affidavit of its agent's secretary, Billie Higginbotham. This affidavit reads, in pertinent part:
Mrs. Higginbotham further affirms that on January 13, 1988, Mr. James Young personally appeared in Mr. Harvey Hale's office and in her presence signed Shelter Insurance Company Automobile Insurance application, Form A-21.55A. Affiant further states that said form had been prepared by her prior to Mr. Young's arrival at the office. After Mr. Young signed said application, the binder portion of the application was signed by Mr. Harvey Hales on the same date at 10:00 a.m. as an authorized agent for Shelter General Insurance Company. (emphasis supplied).
Also included with the motion for summary judgment were the following excerpts from Mr. Young's deposition:
Q. I guess my last question to you, Mr. Young, was whether or not you have seen this particular automobile insurance application before or not.
A. Well, I've seen the application. I've signed the application.
Q. This is your signature on the application?
A. Yes, it is. Uh-huh.
Q. Did anyone go over this application with you when you signed it?
A. No, sir.
Q. Did you sign a blank piece of paper?
A. I just don't know that. I just don't know whether there was anything written on it or not when I signed it, but I did sign it.
Young's deposition response that he did not know whether anything was written on the application when he signed it, together with Mrs. Higginbotham's sworn statement that the application was completed before Young arrived at the office, create a genuine issue of material fact regarding the source of the information contained in the application. Thus, there is no showing that Young affirmatively made specific indications that he selected these particular lower limits of UM coverage. Henson dictates that it is the insurer's burden to demonstrate that any exceptions to UM coverage shown on the application reflect the insured's informed affirmative choice, rather *202 than the insurer's attempt to force the insured to alter standard choices made for him by the insurer. See also, Duhe v. Maryland Casualty Co., 434 So.2d 1193 (La.App. 1st Cir.1983).
Shelter correctly notes that the version of R.S. 22:1406D(1) effective when the Henson facts arose is different from the statute in effect in January 1988, when Young signed the application at issue here. The company urges that the 1987 amendments, which established the requirement of a form "provided by the insurer and signed by the insured," confine the court to the "four corners" of the application in determining whether the insured validly rejected or selected lower limits of UM coverage. In support they cite Acts 1987, No. 436, § 2, which provides:
The legislature expressly declares its intent that legally enforceable rejection of uninsured motorist coverage or selection of lower limits shall be made only on the standard form provided for in this Act. Other writings, letters, communications, or miscellaneous documents shall not be deemed evidence of the intent of any insured in this matter.
We do not believe that this statement shows any legislative intent to prevent the insured from introducing evidence that he did not affirmatively reject UM coverage or select lower limits. Both this statement and the amendments themselves instead appear to prohibit proof by the insurer of a purported rejection or selection of lower limits made in a document or documents other than the single form provided by the insurer, or by oral statements by the insured not made in connection with the completion and execution of the insurer's approved application. This interpretation is consistent with the statutory policy favoring UM coverage.
Thus, as Mrs. Higginbotham's affidavit and Young's deposition clearly evidence a genuine issue of material fact regarding whether Young himself affirmatively chose the lower UM limits reflected on the application, summary judgment was inappropriate. Had these materials shown that the information contained in the application was furnished by Young, summary judgment may have been appropriate.
The case will be remanded for further proceedings.

CONCLUSION
For the reasons expressed, the judgment of the trial court is reversed. Costs of this appeal are assessed against Shelter.
REVERSED AND REMANDED.
HIGHTOWER, J., dissents with written reasons.
HIGHTOWER, Judge, dissenting.
I respectfully dissent.
As opposed to the Henson situation, the application utilized in the present case does not inconspicuously reject coverage. Instead, in answer to one question, the form here affirmatively requests UM coverage. Also, the written reply to the immediately succeeding question states that the applicant does not desire coverage equal to that provided for bodily injury liability. Both answers are handwritten and appear virtually adjacent to plaintiff's signature. At another point, again affixed by hand, the application denotes "10/20" on the UM coverage line. Thus, these three handwritten expressions are all consistent with one another and, equally important, none are inconspicuous. To the contrary, I find the signed application to clearly and unambiguously set forth Young's intent to select the lower UM limits.
Nor am I persuaded, as appellant argues, that Henson controverts the rationale of McCall v. Nguyen, 509 So.2d 651 (La.App. 3d Cir.1987), in which the Third Circuit found a defendant insurer sustained its burden of proof upon showing that the insured signed an application containing a blank filled by a handwritten figure. Indeed, in Henson, the supreme court cited McCall as an example of the valid selection of lower UM limits.
As I appreciate the majority's conclusion in the case sub judice, summary judgment would have been appropriate if the secretary's affidavit or plaintiff's deposition had *203 disclosed that Young provided the information within the application. Notably, however, Section 2 of Acts 1987, No. 436, declares that the intent of the insured should be determined within the form itself. Thus, if the completed application at hand, clearly signed by the plaintiff, does not support summary judgment, it is difficult to visualize any insurer so prevailing.
I would affirm the district court judgment.