629 So.2d 516 (1993)
John J. DOYLE, Jr.
v.
TITAN INDEMNITY COMPANY.
No. 93-CA-542.
Court of Appeal of Louisiana, Fifth Circuit.
December 15, 1993.
*517 Craig J. Cimo, Gretna, for plaintiff/appellant John J. Doyle, Jr.
Dermot S. McGlinchey, Debra F. Cottrell, Margaret Diamond, McGlinchey, Stafford & Lang, New Orleans, for defendant/appellee, Titan Indem. Co.
Ronald L. Faia, Jr., New Orleans, for defendant/appellee, Allstate Ins. Co.
Before BOWES and CANNELLA, JJ., and JOHN C. BOUTALL, J. Pro Tem.
BOWES, Judge.
Plaintiff, John J. Doyle, Jr. (hereinafter "Doyle"), appeals a judgment of the district court granting summary judgment in favor of the defendant Titan Indemnity Company (hereinafter "Titan"). We reverse and remand.

PROCEDURAL HISTORY
Doyle is the Police Chief of the City of Harahan and on January 19, 1990 was operating a vehicle allocated to the police department and owned by the City of Harahan. On that date he was involved in an accident with the alleged tortfeasor, Christopher Gaines, and suffered injuries. Doyle sued Titan as the uninsured/underinsured motorist carrier of Harahan, alleging that his injuries and resulting damages exceeded the policy limits of Gaines' insurance. Titan answered, admitting that it provided liability insurance but denying that it provided uninsured/underinsured coverage. Titan then filed a motion for summary judgment maintaining that Harahan executed a valid waiver of UM coverage and, therefore, that plaintiff was barred from recovery against it.
*518 Each party submitted memoranda and exhibits, and a hearing was had on the motion.
Following the hearing, summary judgment was granted in favor of Titan.

FACTS
The trial court had before it a copy of City of Harahan Ordinance Number 984, which evidences that "... the Mayor shall sign all contracts involving the City of Harahan ..."; a copy of the minutes of the Mayor and Board of Alderman dated December 7, 1989; the insurance policies, and declarations sheets, including a form for rejection of UM coverage; "Renewal Proposal" written by Michael Martin, the agent for the Gaynell J. Martin Insurance Agency; and the memoranda of counsel, including an affidavit sworn by Doyle.
The minutes dated December 7, 1989, contain the following:
Mr. Mike Martin from Gaynel Martin Insurance Agency gave out brochures to council members and explained. He advised there will be a reduction in premiums. There was some discussion regarding uninsured motorists clauses, deductibles, etc. He advised that the net reduction on the insurance premiums is $2,148.00. The renewal date is January 1, 1990. A motion to accept the proposal presented in the amount of $81,061.00 came from Alderman Walker, seconded by Alderman Barocco.
Alderman Anzelmo stated that he is in favor of this motion, but will abstain from voting since his firm provides legal counsel to the insurance company involved.
A report given by Chief Doyle at the meeting evidences the fact that he was present. In the affidavit submitted in connection with the motion for summary judgment, Doyle declared that at no time during this meeting did Mr. Martin advise the Board "or anyone else for that matter, of the option of the City of Harahan to select alternate uninsured motorists limits different from the liability limits of the insurance contract." No countervailing affidavit was filed.
The written proposal submitted by Martin evidences a proposed $1,000,000 single limit/occasion coverage on the insurable vehicles and contains the following provision: "Excludes Uninsured Motorist Liab [sic]."
No other reference to UM coverage was contained in the proposal.
Attached to the policy was a form titled "Rejection Of Uninsured Motorists Coverage On Selection Of Limit Of Liability." The form had a double "X" typed on the box which states that the "undersigned insured... agrees that the Uninsured Motorists Coverage afforded in the policy is hereby deleted." The form contains the signature of Carlos Ferrara, the Mayor of Harahan.

ASSIGNMENT OF ERROR
Doyle alleges that the trial court committed manifest error in granting summary judgment since there are genuine issues of material fact which remain unresolved. We agree.

ANALYSIS
The evidence in the record shows that while the Board and Mayor were presented with an insurance proposal, such proposal had already deleted UM coverage where it states "Excludes Uninsured Motorist Liab [sic]," supra. Further, although the minutes show that UM coverage was discussed, there is no indication as to whether the package proposal offered by Titan and accepted by the Board ever included UM coverage; or whether the Board ever discussed such inclusion and subsequently rejected it. That is, did Titan offer a selection of UM benefits to the Board? The uncontested affidavit of Doyle tends to prove that any such discussion, or determination to choose rejection, did not take place.
Further, we take notice of the appearance of the purported rejection, which has the double "X" typed in deleting UM coverage. A comparison of earlier rejection forms attached to earlier policies indicates that that box was filled in, at least on other forms, absent a signature by the insuredin other words, on its face, the form appears to have been completed prior to its submission to the insured for signature. This in, and of itself, is not dispositive of the entire question, but is *519 certainly noteworthy when considered with the lack of any other evidence that an actual option was given to the Board and the Mayor. With regard to the rejection form itself, we note that no evidence was adduced verifying the signature on that form as that of Mayor Ferrara, and no evidence as to who filled in that typed box.
An option to reject UM coverage by the insured is required by the statute itself, as well as by myriad jurisprudence. See, e.g., Jones v. King, 549 So.2d 350 (La.App. 5 Cir.1989); Robinson v. Moore, 580 So.2d 1109 (La.App. 4 Cir.1991); Martin v. Clanton, 626 So.2d 909 (La.App. 5 Cir.1993).
In Henson v. Safeco Ins. Companies, 585 So.2d 534 (La.1991), our Supreme Court discussed the efficacy of a pre-completed form:
The insurer's analysis is faulty because insurers in Louisiana are required to include UM coverage unless specifically rejected by the insured. It is the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured. Here, the insurer, by presenting a completed application form to Henson, attempted to set up an automatic rejection of UM coverage and thus require Henson to affirmatively change the form in order to obtain UM coverage. See Duhe v. Maryland Casualty Co., 434 So.2d 1193 (La. App. 1st Cir.1983) (there was no selection of lower limits by the insured when the insurer attempted unilaterally to provide lower limits). Insofar as this record shows, Henson's only affirmative act was to sign an application for insurance presented to him in response to his request for complete coverage.
[Emphasis supplied].
In Young v. Shelter Ins. Co., 604 So.2d 199 (La.App. 2 Cir.1992), the court found, and we agree, that:
... Henson dictates that it is the insurer's burden to demonstrate that any exceptions to UM coverage shown on the application reflect the insured's informed affirmative choice, rather than the insurer's attempt to force the insured to alter standard choices made for him by the insurer. See also, Duhe v. Maryland Casualty Co., 434 So.2d 1193 (La.App. 1st Cir.1983).
The court found in Henson, supra, that a positive and unambiguous action was required on the part of the insured (which action was not evident in that case):
Accordingly, there was no express, affirmative act on the part of the insured which clearly, unmistakably and unambiguously rejected UM coverage as required by La. Rev.Stat. 22:1406D(1)(a). We therefore conclude that the insurer's proof of Henson's signing a general application for insurance, without either marking the inconspicuous rejection box himself or signing or initializing the mark by the insurer's agent, was insufficient to establish a valid rejection of UM coverage. Absent a valid rejection by the insured, UM coverage is specifically read into all automobile liability policies in the amount provided for bodily injury coverage.
[Emphasis supplied].
The insurer must place the insured in a position to make an informed rejection of UM coverage. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992).
Implicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option. Uhrich's [Uhrich v. Nat'l Fire Ins. Co., 569 So.2d 1062 (La.App. 3 Cir.1990)] requirement that the insured be given the option of selecting lower limits would be empty protection indeed if the insurer were not also required to make sure the insured is informed of such an option. An insured cannot exercise an option he does not know exists. This can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses.
[Emphasis supplied].

Tugwell, supra.
*520 The unanswered question which concerns us, and which is not laid to rest by the record before us, is whether or not Titan ever offered to provide UM coverage in its package. While it is evident that the Board and the Mayor are aware of the existence of UM coverage, it is not clear whether Titan, in proposing to insure the City, made UM coverage a "meaningful" choice. If, for example, the "discussion" before the Board consisted of Mr. Martin informing the Board that it would not or simply did not provide UM coverage in its insurance package, such a fact, combined with what appears to be a pre-completed form, makes it very questionable as to whether any viable option to accept or reject UM coverage was given, and therefore, whether the rejection was valid. Absent a valid rejection, UM coverage is specifically read into the liability policy. Henson, supra.
The insured must be allowed an opportunity to make an "informed and meaningful" selection of being covered by UM coverage or not. Tugwell, supra. Id.
It is impossible to tell, from the present record, whether the Board was afforded both an informed and meaningful choice where there is no evidence that anything other than a pre-packaged proposal, deleting UM coverage, was presented to be voted upon. We hold that the existence of such an option is a genuine question of material fact which precludes summary judgment.
Additionally, Titan did not prove the genuineness of Mayor Ferrara's signature, nor that he (or some other legal representative of Harahan) filled in the rejection box, and, therefore, exercised any options which may have existed.
Defendant cites us to LSA-R.S. 22:1406(D)(1)(a)(i) which states that UM coverage need not be provided to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued by the same insurer or its affiliates. Of the other two signed rejections in the record for 1986 and 1987, the 1986 document evidences rejection of UM with "Illinois Insurance Exchange," which company has not been proven to be an affiliate of Titan. The 1987 rejection was signed by someone other than Mayor Ferrara; the entire question of the authority of that signatory and therefore the effectiveness of that signature is an open question (important insofar as it applies to this limited issue of renewal policies). Furthermore, the declarations sheets on both these policies do not evidence that the vehicles and persons insured then are the vehicles and persons insured in 1990. The addition of another insured and/or a new vehicle cannot be made to a policy and still have the policy considered a renewal or substitute one. See Tully v. Liberty Mutual Fire Ins. Co., 516 So.2d 435 (La.App. 1 Cir.1987); Thibodeaux v. Champion Ins. Co., 614 So.2d 232 (La.App. 3 Cir. 1993), wherein it was held that such additions have the effect of a new contract, and a separate UM waiver is required.
Therefore, the question of whether or not this is a "renewal" policy is also unresolved by the record before us.
The jurisprudence regarding summary judgment is clear and well established:
Summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. To satisfy his burden, the movant must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. The papers supporting the position of the moving party are to be closely scrutinized while opposing papers are to be indulgently treated, in determining whether the mover has met his burden. Summary judgment may not be granted even if the trial court has grave doubts as to a party's ability to establish dispute facts.

*521 Young, supra. [Citations omitted].
Titan did not meet its burden of proof in the present case, and therefore summary judgment must fail. On the record before us, it was error for the trial court to grant summary judgment in favor of Titan.

DECREE
For the foregoing reasons, the judgment in favor of appellee, Titan, is reversed, and the matter remanded for further proceedings. Costs of this appeal are taxed against Titan, appellee.
REVERSED AND REMANDED.