585 So.2d 534 (1991)
Thomas HENSON
v.
SAFECO INSURANCE COMPANIES and International Service Insurance Company.
No. 90-C-2435.
Supreme Court of Louisiana.
September 9, 1991.
*535 Joel Hanberry, Cutoff, for plaintiff-applicant.
Frank A. Fertitta, Lane, Fertitta, Lane & Tullos, Calvin E. Hardin, Jr., Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, for defendants-respondents.
LEMMON, Justice.
The principal issue in this case is whether the named insured's signing of an application for automobile liability insurance, on which the insurance agent had filled in numerous answer boxes including one which rejected uninsured motorist (UM) coverage, constituted a valid rejection in writing by the insured as required by La. Rev.Stat. 22:1406 D(1)(a) at the time of the application. We conclude that the evidence of the insured's merely signing such an application form, without his marking the rejection section himself or initialing the mark made by the agent, was insufficient to establish an affirmative rejection of UM coverage.
In March of 1982 plaintiff's father, William Henson, purchased a pick-up truck. Because Henson's lender required Henson to have insurance on the truck before it was taken off the lot, Henson telephoned his bookkeeper, requesting him to obtain full coverage on the truck. Henson's insurance agent called back and confirmed coverage.
Henson's insurance agent thereafter brought an application for personal automobile liability insurance on the truck to Henson's office. The agent had completed the application form except for Henson's wife's driver's license number, and Henson signed the application and wrote the license number. The application, as signed by Henson and introduced at trial, appears as follows:
*536 The box for question 18, pertaining to UM coverage, contained an "X" inserted by the agent who did not testify at trial.
Fifteen months later plaintiff (Henson's son) was involved as a passenger in a one-car accident in Virginia. The driver of the car was uninsured under Louisiana law because his liability insurance policy did not afford coverage to passengers.
*537 Plaintiff filed suit against his father's insurer, seeking to recover UM benefits under the policy.[1] The insurer denied the claim on the basis that Henson had rejected UM coverage.
In a bifurcated trial on the issue of coverage only, the trial court ruled that the policy did not provide UM coverage. The court reasoned that the signing of the application by a businessman knowledgeable about insurance matters was "a rejection in writing as required by the law."
The court of appeal affirmed. 569 So.2d 191. The court stated that the completed application form signed by Henson met the requirements of Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987) for a valid rejection of UM coverage, since the document established that the insured had expressly rejected coverage in a single document as of a specific date and as to a particular policy. The court further observed that the fact Henson merely glanced at the document before signing it did not render the rejection invalid.
This court granted plaintiff's application for certiorari in order to review the UM coverage rejection issue. 572 So.2d 81.
The object of UM insurance is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Johnson v. Fireman's Fund Insurance Co., 425 So.2d 224 (La.1982); Bond v. Commercial Union Assurance Co., 407 So.2d 401 (La.1981). Inasmuch as the statutory requirement of UM insurance represents a strong public policy, statutory coverage will be read into any automobile liability policy as if it were written in the policy itself. Block v. Reliance Insurance Co., 433 So.2d 1040 (La. 1983). Nevertheless, such coverage may be specifically rejected pursuant to the statutory guidelines. However, policies are to be liberally construed in favor of UM coverage, and any exception to the mandatory UM coverage is to be strictly construed. Bosch v. Cummings, 520 So.2d 721 (La.1988); Giroir v. Theriot, 513 So.2d 1166 (La.1987); Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); American International Insurance Co. v. Roberts, 404 So.2d 948 (La.1981).
The right to reject UM coverage and the method of rejection have been addressed several times by the Louisiana Legislature. The original UM statute, adopted by La. Acts 1962, No. 187, required UM coverage in every automobile liability insurance policy issued in Louisiana, in an amount not less than the limits mandated for bodily injury damages by the Motor Vehicle Safety Responsibility Law. The initial statute also gave the named insured the right to reject UM coverage.
When the mandatory limits for UM coverage were increased in 1972, the insured was also given the option of selecting lower limits. La.Acts 1972, No. 137.
La.Acts 1974, No. 154, amended the statute to require that the insurer provide UM coverage "in not less than the limits of bodily injury liability provided in the policy," unless the insured rejected the coverage or selected lower limits. Although this statute did not require a rejection in writing, the courts interpreted the statute, by looking to general insurance laws, as requiring a written rejection. See American International Insurance Co. v. Roberts, 404 So.2d 948 (La.1981); LeBoyd v. Louisiana Transit Co., 375 So.2d 749 (La.App. 4th Cir. 1979).
La.Acts 1977, No. 438, specifically required that the rejection of UM coverage be in writing, adopting the statutory language at issue in the present case.[2] See, generally, W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice §§ 101, 105 (1986); McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La. L.Rev. 691 (1983). At the time of the signing of the application in this case, the applicable *538 statute concerning rejection of UM coverage provided in part:
D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits.... Any document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto....
La.Rev.Stat. 22:1406D(1)(a) (emphasis added).
This court has interpreted the statutory language at issue in the present case to require that any exception to UM coverage must be expressed clearly, unambiguously and unmistakably, and that a waiver of UM coverage must be in writing and signed by the named insured or his authorized representative. Giroir v. Theriot, 513 So.2d 1166 (La. 1987); Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); see W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice, § 105 (1991 Supp.). The insurer has the burden to prove that a rejection of coverage or a selection of lower limits has been legally perfected. Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987).
In the Roger case the insured wrote a letter to the insurer which specifically rejected UM coverage in Pennsylvania and instructed the insurer to reject coverage on the earliest possible effective date in the event any other state changes its law to allow rejection of such coverage. Holding that the letter was not a sufficient rejection of UM coverage under La.Rev.Stat. 22:1406 D, this court noted that Louisiana allowed rejection of UM coverage by the insured at the time the letter was written and the letter therefore could not have pertained to Louisiana. This court additionally noted that "such imprecise and prospective language falls far short of meeting the strict requirements of our law. Public policy, legislative intent, and strict statutory interpretation of exceptions to coverage, all require clear, unmistakable rejection." Id. at 1131. Addressing UM coverage generally, this court further stated:
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage under La.R.S. 22:1406D(1)(a), the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. This narrow reading of La. R.S. 22:1406D(1)(a) is in accord with the liberal construction afforded the uninsured motorist statute in order to carry out its objective of protecting an innocent insured who becomes the victim of the negligent uninsured or underinsured motorist.
Id. at 1131-32 (citations omitted).
In the present case the insurer contends that Henson's signing of the application form constituted a valid rejection of UM coverage. The insurer argues that if Henson had desired UM coverage with limits equal to that provided by bodily injury coverage, *539 he could have simply placed an "X" or some other mark opposite the space provided for acceptance of UM coverage.
The insurer's analysis is faulty because insurers in Louisiana are required to include UM coverage unless specifically rejected by the insured. It is the rejection of UM coverage, and not the acceptance, that must be the affirmative act of the insured. Here, the insurer, by presenting a completed application form to Henson, attempted to set up an automatic rejection of UM coverage and thus require Henson to affirmatively change the form in order to obtain UM coverage. See Duhe v. Maryland Casualty Co., 434 So.2d 1193 (La. App. 1st Cir.1983) (there was no selection of lower limits by the insured when the insurer attempted unilaterally to provide lower limits). Insofar as this record shows, Henson's only affirmative act was to sign an application for insurance presented to him in response to his request for complete coverage.
Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. See 2 A. Widiss, Uninsured and Underinsured Motorist Insurance, § 32.5 (2d ed. 1985). The rejection language in the present case was not conspicuous on the application. Cf. Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir. 1982) (the rejection form completely and thoroughly detailed the options available for UM coverage, contained a bold-print heading which read "An Important Message About Your Uninsured Motorists Coverage," and the information contained on the form was in ordinary sized print and in layman's terms). There was no separate signature line for the insured to sign or initial and thereby indicate a specific intent to reject UM coverage, and Henson's merely signing the general application for insurance unambiguously signified only the intent to obtain an insurance policy. Cf. Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3rd Cir. 1989), cert. denied, 559 So.2d 138 (the insured's signing a separate rejection clause constituted a valid rejection of UM insurance, even though the insured did not recall being offered UM coverage). Moreover, Henson did not himself place the "X" in the rejection box or even initial the "X" already placed there by the insurer's agent. Cf. Bertrand v. Shelter General Insurance Co., 571 So.2d 861 (La.App. 3rd Cir.1990) (the insured validly rejected UM insurance by signing the application and writing the word "no" next to the language "Do you want Uninsured Motorist coverage?" and "Do you want Uninsured Motorists limits equal to Bodily Injury Limits?"); McCall v. Nguyen, 509 So.2d 651 (La.App. 3rd Cir. 1987) (the insured validly selected lower limits by signing an application which contained a handwritten notation indicating lower UM limits); Moore v. Young, 490 So.2d 519 (La.App. 4th Cir.1986) (the insured validly selected lower limits by checking the box for "Uninsured Motorists" and writing "5/10" beneath the box). Henson merely signed the completed application form and did not affirmatively make any specific indications regarding the rejection of UM coverage.[3]
Accordingly, there was no express, affirmative act on the part of the insured which clearly, unmistakably and unambiguously rejected UM coverage as required by La.Rev.Stat. 22:1406 D(1)(a). We therefore conclude that the insurer's proof of Henson's signing a general application for insurance, without either marking the inconspicuous rejection box himself or signing *540 or initialing the mark by the insurer's agent, was insufficient to establish a valid rejection of UM coverage. Absent a valid rejection by the insured, UM coverage is specifically read into all automobile liability policies in the amount provided for bodily injury coverage.
The judgments of the lower courts are reversed, and the case is remanded to the district court for further proceedings consistent with this opinion.
COLE, J., respectfully dissents.
NOTES
[1] As a resident of Henson's household, plaintiff qualified as an insured under the policy.
[2] La.Rev.Stat. 22:1406D was amended again in 1987, to require specifically that the rejection or selection of lower limits "shall be made only on a form designed by each insurer."
[3] In response to plaintiff's contention that the application did not provide a place for Henson to select limits less than the bodily injury coverage, the insurer argues that Henson could have indicated this selection by filling in the desired dollar amount of lower coverage in the blank spaces of the section which stated Coverages and Limits of Liability. However, even if these blanks on the application form met the statutory and jurisprudential requirement on the insurer to provide a place to select lower limits, the fact that Henson did not fill in an amount does not necessarily indicate that he chose a UM limit of zero. The blank space could just as reasonably indicate that Henson desired UM coverage in the full amount of the bodily injury liability coverage provided by the policy. The failure to fill in an amount was ambiguous conduct regarding the intent of the insured, and proof of this failure clearly does not fulfill the insurer's burden of establishing rejection of UM insurance or selection of lower limits.