653 So.2d 185 (1995)
Kenneth NELSON, Sr. and Janet Nelson, Plaintiffs-Appellants
v.
Glen RAGAN, Commercial Union Insurance Company and Aetna Insurance Company, Defendants-Appellees.
No. 26724-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 1995.
Writ Denied June 16, 1995.
*186 Law Offices of Jack M. Bailey, Jr. by Jack M. Bailey, Jr. and William K. Adams, Shreveport, for appellants.
Stafford, Stewart & Potter by Russell L. Potter and Andrew P. Texada, Alexandria, for appellees.
Before SEXTON, BROWN and WILLIAMS, JJ.
SEXTON, Judge.
Kenneth Nelson, Sr. and Janet Nelson, plaintiffs in a suit for damages arising out of an automobile accident, appeal a summary judgment in favor of Aetna Insurance Company, the Nelsons' insurer. The sole issue is whether the trial court erred in finding that there are no genuine issues of material fact concerning the validity of the uninsured motorist (UM) coverage rejection signed by Nelson. We affirm.
On June 2, 1991, Glen Ragan rear-ended the Nelson vehicle in which Kenneth Nelson, Sr. was a passenger. Nelson sustained injuries for which he and his wife sought recovery. Nelson alleged that, at the time of the accident, he had an Aetna Insurance Company policy in full force and effect which included UM coverage.
Aetna responded with a motion for summary judgment and attached the insurance policy and the "Uninsured Motorists Coverage Option Selection Form" signed by Nelson on May 21, 1990. Aetna also filed the affidavit of Kenneth Jones, a technical consultant for Aetna, who stated that Nelson signed the rejection of UM coverage and that the attached policy was the only one that existed between Aetna and Nelson on the date of the accident.
Along with his opposition to the summary judgment, Nelson filed an affidavit in which he stated that he went to the office of his insurance agent to obtain the policy. Having phoned ahead to discuss liability limits, Nelson was only there a few minutes. Nelson deposes that there was no discussion of uninsured/underinsured motorist protection on the phone or during the visit at the agency.
According to Nelson, the insurance agent presented him with a set of documents already filled out by the insurance agency personnel prior to his arrival. Except for his signature, none of the writing on either of the two pages of the application and the rejection were Nelson's handwriting. Without any discussion of UM coverage, Nelson was handed the documents and instructed to sign. Agency personnel did not explain that he would be rejecting UM coverage and did not state that he could elect lower limits of UM coverage than his liability coverage, elect full coverage or reject any UM coverage.
After considering the record and the filings made in connection with the motion for summary judgment, the trial court granted summary judgment in favor of Aetna and dismissed the Nelsons' demands against Aetna without assigning reasons. The Nelsons appeal, contending that the trial court erred in finding that there were no genuine issues of material fact precluding summary judgment and in finding that the defendant was entitled to summary judgment as a matter of law.
Appellate courts review the granting of summary judgment de novo and use the same criteria which govern the trial court's consideration of whether summary judgment is appropriate. Under LSA-C.C.P. Art. 966, a motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992). Whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can properly be resolved within the framework of a motion for summary judgment. Garcia v. Certified Lloyds Insurance Co., 598 So.2d 1278 (La.App. 4th Cir.1992), writ denied, 604 So.2d 969 (La.1992).
The purpose of UM legislation is to promote full recovery for innocent automobile accident victims by making UM coverage available for their benefit. The statute is to be liberally construed and statutory exceptions to coverage are to be interpreted strictly. *187 Any exclusion from coverage in an insurance policy must be clear and unmistakable. The insurer bears the burden of proving any insured named in the policy rejected in writing UM coverage equal to bodily injury limits or selected lower limits. Tugwell v. State Farm Insurance Co., supra.
LSA-R.S. 22:1406(D) requires insurers to provide uninsured motorist coverage (UM) in not less than the limits of bodily injury liability provided by the policy. UM coverage is not required when the insured named in the policy rejects the coverage in writing or selects lower limits. Further, the Louisiana Supreme Court has held that a valid rejection or selection of lower limits must be in writing and signed by the named insured or his legal representative. The insurer must place the insured in a position to make an informed rejection of UM coverage. The form used by the insurance company must give the applicant the opportunity to make a meaningful selection from his options provided by statute: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage. Tugwell v. State Farm Insurance Co., supra.
The Nelsons rely on Henson v. Safeco Insurance Companies, 585 So.2d 534 (La. 1991), wherein the supreme court held that an insurance applicant who merely signed an insurance application rejecting UM coverage, where the mark rejecting coverage was completed in advance by the insurance agent and was inconspicuously located in the policy, had not validly rejected UM coverage. The court stated that a rejection of UM coverage must be expressed clearly, unambiguously and unmistakably. The Henson court further stated:
It is the rejection of UM coverage and not the acceptance, that must be the affirmative act of the assured. Here, the insurer, by presenting a completed application form to Henson, attempted to set up an automatic rejection of UM coverage and thus require Henson to affirmatively change the form in order toobtain UM coverage.
Henson, supra at 539.
We have attached a copy of the Henson application in an appendix to this opinion. We note at the outset that in the Henson policy application,there was no separate UM rejection form with the policy for the applicant to sign. Rather, the rejection line was inconspicuously located among other items in the general application for insurance, and the policy required only a single signature at the end of the application.
The Henson court found that the insurer did not place Henson in a position to make an informed rejection of UM coverage. There was no separate signature line for the insured to sign or initial indicating a specific intent to reject UM coverage. Henson did not place the "X" in the rejection box or initial the "X" already placed there. The court found there was no express affirmative act on the part of the insured which clearly, unmistakably and unambiguously rejected UM coverage. Henson's only affirmative act was signing the general application.
The appellants contend in the instant case that there was no clear, unambiguous, and unmistakable rejection of UM in this matter because there was no explanation of UM coverage options and the waiver form had been filled out prior to presentation to Nelson for his signature. Therefore, they argue, Nelson had to affirmatively act to obtain UM coverage, as opposed to the requirement in Henson, supra, that the insured must affirmatively act to reject UM coverage.
In Thomas v. Goodson, 26,356 (La.App.2d Cir. 12/07/94) 647 So.2d 1192, this court upheld the validity of a UM rejection even though the insured alleged she was handed a completed form to sign rejecting UM coverage without any prior discussion of UM coverage. We distinguished the rejection form in Henson, supra, in which rejection of UM coverage was provided by a single inconspicuous sentence preceded by an empty box to be marked in the general application. The Henson policy had no separate signature line for the applicant and no information regarding Louisiana law on UM coverage.
The Thomas policy (also included in the appendix), on the other hand, provided a separate, distinct form for UM rejection within the policy and gave information on Louisiana law regarding UM coverage. The *188 insured was given the option to select UM coverage or reject it and was advised that if the information was not filed in or signed, UM coverage would be provided. This court stated further in Thomas:
Mrs. Watson does not contest the authenticity of her signature. The copy of the application submitted by defendant indicates that the original application has several hand drawn circles around various parts of the application, including circles drawn around the printed "X's" denoting the place where an applicant is to sign and also circles drawn around wherever there were empty boxes to be checked, such as the election boxes regarding the rejection of UM coverage. The plaintiff denies that she placed the check marks in the boxes rejecting UM coverage and was merely told to sign, and did so. She contends the check marks were present when she signed the document.
Although plaintiffs argue that the rejection was invalid because the rejection boxes were checked by the insurance agent, this fact alone does not invalidate the rejection. Henson says the applicant may either mark the boxes himself or sign or initial the insurer's mark. Patsy Watson admits that the signature directly under the marked boxes rejecting UM coverage is her own. She states that the application was complete when she signed it. We also note that in bold print directly above the final signature line on the application, the applicant is admonished not to sign the application without reading it in its entirety and not to sign if there are any blanks.
A person who signs a written document is presumed to have knowledge and understanding of that which he signs. Oncale v. Aetna Casualty and Surety Co., 417 So.2d 471 (La.App. 1st Cir.1982). We further note that Oncale was cited by the supreme court in Henson.

In Oncale, the First Circuit affirmed a summary judgment in favor of the insurer upholding the validity of an insurance applicant's rejection of UM coverage where the applicant signed the separate rejection form within the application, even though the applicant claimed in her affidavit that she did not know she was rejecting UM coverage when she signed the rejection form, and that at no time was any mention made of the rejection of such coverage. The court found that the rejection form completely and thoroughly detailed the options available for UM coverage under Louisiana law. The form contained a bold-print heading which read, "An Important Message About Your Uninsured Motorist Coverage." The language in the Rejection form was in ordinary-sized print and in laymen's terms, self-explanatory, and was not confusing or misleading. The court held that absent any fraud or misconduct by the insurance agent (which was not alleged in the pleadings or affidavits), the plaintiffs were bound by the written rejection of UM coverage.
In addition to her signature on the UM rejection form and on the VASA application itself, there is a third and final signature of Patsy Thomas following the application proper. This "APPLICANT'S STATEMENTREAD BEFORE SIGNING" as it is called, has the following language in bold, all capital letters:
THE COVERAGES, INCLUDING THE OFFER OF ADDITIONAL COVERAGES AND UNINSURED MOTORISTS COVERAGE WERE EXPLAINED TO ME, AND I KNOWINGLY MADE THE SELECTIONS ABOVE. ANY PORTION OF THIS APPLICATION FILLED OUT BY AN AGENT OR BROKER IS EXPRESSLY ACKNOWLEDGED TO HAVE BEEN DONE AT MY REQUEST AND WITH MY AUTHORIZATION.
There are no allegations in the affidavit submitted by the plaintiff that she was incapable of reading the insurance application, nor are there any allegations that she, in fact, did not read the application or its pertinent parts before signing it. Mrs. Watson does not allege that she signed the above statement in error, or was induced to sign the above by fraud or duress. Absent one of these vices of consent, testimonial or other evidence may not be admitted to negate or vary the contents of an act under private signature. LSA-C.C.Art. 1848.

*189 We find that the facts of this case are significantly distinguishable from the facts in Henson, the case upon which plaintiffs rely. Except for the claim that she did not supply the check marks rejecting uninsured motorists coverage and that there was no discussion of UM coverage, there is no similarity in the written record of the circumstances of the rejection. Unlike the application in Henson, the form of the rejection is prominently located in the application and requires a separate signature. It clearly gives the required options to the applicant. It is hard to imagine that one looking at the rejection form could not plainly see, read, and understand what was being signed. Moreover, unlike the application in Henson, the VASA application provides two boldly written admonishments to the applicant to read the document before signing. Mrs. Watson signed an acknowledgement that she knowingly made the selections rejecting UM coverage.
Thomas, supra at 1196-96.
Our reading of Henson is that it was not solely the fact that the box rejecting UM coverage was completed by the agent in advance which invalidated the rejection. Other factors, such as its inconspicuous location in the policy, the lack of information that would enable the applicant to make an informed choice regarding UM coverage, and the lack of an affirmative act by the applicant rejecting UM coverage, in conjunction with the fact that the agent completed the application in advance rejecting UM coverage, all combined to invalidate the rejection in Henson.
We read the Henson decision to require that the application present the applicant with a separate or conspicuous rejection form that informs the applicant of his options regarding UM coverage and requires the applicant to do some affirmative act rejecting coverage, such as checking the rejection box himself or initialing or signing the rejection.
The rejection form, or more properly speaking, the "elect to reject" form signed by Nelson (also included in the Appendix) complied with the mandates of Henson and Tugwell, supra, which require that the applicant be given an opportunity to make a meaningful selection from the statutory options: (1) UM coverage equal to bodily injury limits in the policy; (2) UM coverage lower than bodily injury limits in the policy; or (3) no UM coverage.
As in the Thomas application, this Aetna policy application had a separate form for UM options. The form provided information on Louisiana's mandatory UM coverage absent a rejection. The form also provided the insured the option of selecting UM coverage equal to liability limits of the policy or less than liability limits along with the opportunity to reject UM coverage. Further, the form contained an admonition to read carefully and indicate the selection of coverage.
Somewhat distinguishable from the form in Thomas, supra, this form does not state that UM coverage will be provided unless the form was filled in and signed. Nevertheless, the form does state that the insurer will, as required by law, supply UM coverage equal to bodily injury liability coverage limits in the policy unless the applicant selects a lower limit or rejects UM coverage. This tracks the statutory language of LSA-R.S. 22:1406(D).
We note that we would have preferred that the policy also contain a separate statement in the application, as it was in Thomas, that the coverages had been explained and parts filled out were done so with the authorization of the insured. However, we do not find this to be fatal to the rejection and do not consider it to be a requirement of Henson.
Accordingly, we hold that the signature of Mr. Nelson on the separate and plainly readable rejection form constitutes an affirmative rejection of UM coverage by Nelson. Nelson does not contest his signature on the rejection form, nor does he contend that he did not read the form and did not understand the form. Even though he contends UM coverage was not discussed, Nelson did not state that he signed the UM form in error or was induced to sign by fraud or duress. Absent one of these vices of consent, testimony or other evidence may not be admitted to negate or vary the contents of an act under *190 private signature. LSA-C.C. Art. 1848; Thomas v. Goodson, supra.
This UM selection form is separate and requires the insured's signature. It sets out the required options to the insured. The language of the form is straightforward and uncomplicated. Under the terms of the policy form, Nelson rejected UM coverage. There is no genuine issue of fact that he did sign the rejection form. The trial court did not err in finding Aetna was entitled to summary judgment as a matter of law.
The judgment is affirmed at appellants' costs.
AFFIRMED.
BROWN, J., dissents with reasons.
*191 
*192 
*193 
*194 BROWN, Judge, dissenting.
The majority opinion's reliance on LSA-C.C.Art. 1848 is misplaced. The court in Henson v. Safeco, supra, found that the evidence of the insured's merely signing such a application form, without his marking the rejection section himself or initialing the mark made by the agent was insufficient to establish an affirmative rejection of UM coverage. Henson is in accord with the statutorily expressed strong public policy of reading UM coverage into any automobile liability policy. Although UM coverage may be specifically rejected, policies are to be liberally interpreted in favor of UM coverage and any exception strictly construed.
Henson reaffirmed the legal premise that the insured must be placed in a position to make an informed rejection of UM coverage. Plaintiff's affidavit stated that he signed a policy already filled out (like the plaintiff in Henson) and that there was no discussion of uninsured/underinsured protection. Clearly material questions of fact exist and summary judgment was improper.