673 So.2d 345 (1996)
Mary A. JOHNSON
v.
ALLSTATE INSURANCE COMPANY.
No. 95 CA 1953.
Court of Appeal of Louisiana, First Circuit.
May 10, 1996.
Writ Denied June 28, 1996.
*346 Alan L. Schwartzberg, Baton Rouge, and Michael H. Schwartzberg, Lake Charles, for Plaintiff-Appellant Mary A. Johnson.
Daniel R. Atkinson, Sr., Baton Rouge, for Defendant-Appellee Allstate Insurance Company.
Before SHORTESS, PARRO and KUHN, JJ.
KUHN, Judge.

I. THE ISSUE
The issue presented in this appeal is whether a signed rejection of uninsured[1] motorist coverage in an automobile policy meets the statutory and jurisprudential requirements for a rejection.

II. THE FACTS AND PROCEDURAL BACKGROUND
Plaintiff, Mary Ann Johnson ("Johnson"), filed suit against defendant, Allstate Insurance Company ("Allstate"), alleging she was involved in an automobile accident with an underinsured driver, she is covered by a policy of underinsured motorist insurance issued by defendant, and defendant has refused to pay her claim regarding this accident. Allstate filed a motion for summary judgment, contending Johnson is not entitled to uninsured motorist ("UM") coverage because she signed a valid UM waiver form wherein she rejected UM coverage. In connection with this motion, the parties stipulated to the following pertinent facts:
Johnson was involved in an automobile accident on May 31, 1993, with Emmitt Spurlock, who was insured by Illinois National Insurance Co. ("Illinois"). As a result of the accident, Illinois paid its policy limits of $10,000.00 to Johnson. Several years prior to the accident, Allstate had issued a policy to Johnson.[2] During February of 1993, a 1992 Nissan Maxima was added to the policy and a 1984 Nissan Maxima was removed. Johnson signed a UM waiver form on July 21, 1992, when the policy covered the 1984 Maxima.
The parties dispute whether the UM waiver signed on July 21, 1992, was valid and enforceable on the date of the accident, May 31, 1993.[3] Thus, through stipulation the *347 parties have reduced the issue to be resolved in this case to the question of whether the UM rejection form used in this case is legally sufficient to reject UM coverage.
The trial court concluded the form executed by Johnson was a valid waiver of UM coverage and granted Allstate's motion for summary judgment, dismissing plaintiff's suit with prejudice. Plaintiff has appealed, contending the trial court erred in granting Allstate's motion for summary judgment and in finding the UM waiver comported with Louisiana law. Plaintiff argues there has been "no affirmative and unambiguous specific rejection of the UM coverage by the insured."

III. THE LAW

A. Standard of Review
Appellate courts are to review summary judgments on a de novo basis under the same criteria governing the district court's consideration of whether a summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). The motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute which can be resolved properly within the framework of a motion for summary judgment. Garcia v. Certified Lloyds Ins. Co., 598 So.2d 1278, 1280 (La.App. 4th Cir.), writ denied, 604 So.2d 969 (La.1992).

B. Uninsured Motorist Insurance
Our determination in this case is controlled by the provisions of La.R.S. 22:1406D(1)(a)i which were in effect at the time of the alleged rejection. See Henson v. Safeco Insurance Companies, 585 So.2d 534, 537-538 (La. 1991). When Johnson signed the form on July 21, 1992, the statute provided as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subparagraph unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates.
The object of the UM statute is to provide full recovery for innocent automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Tugwell, 609 So.2d at 197; Henson, 585 So.2d at 537. The statute provides UM coverage may be specifically rejected in writing. Although the statute is to be liberally construed, exceptions to the mandatory UM coverage are to be strictly interpreted. Tugwell, 609 So.2d at 197; Henson, 585 So.2d at 537. The insurer bears the burden of proving the insured executed a valid rejection of UM coverage. Tugwell, 609 So.2d at 197; Henson, 585 So.2d at 538.

C. Rejection of UM Coverage
Although La.R.S. 22:1406D(1)(a) does not prescribe how a rejection or selection of lower limits is to be effected other than requiring it to be in writing, the supreme court has delineated the following requirements for a valid rejection:
[A] valid rejection or selection of lower limits must be in writing and signed by the *348 named insured or his legal representative. Further, the insurer must place the insured in a position to make an informed rejection of UM coverage. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided by the statute: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage.
Tugwell, 609 So.2d at 197 (citations omitted).
In Roger v. Estate of Moulton, 513 So.2d 1126, 1132 (La.1987), the supreme court stated for a rejection to be valid pursuant to La.R.S. 22:1406D(1)(a), "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer."
The form used in this case provides, in pertinent part, as follows:

Uninsured Motorists Insurance Selection of Coverages and Limits
* * * * * *
Uninsured Motorists Bodily Injury Insurance (Coverage SS) Options: Please check the box below of the option desired and, if necessary, fill in the requested limits.
[] Option 1Coverage SS may be written with limits equal to the limits afforded in the policy for the Bodily Injury Liability Coverage.
[] Option 2Coverage SS may be written with any other limit available. This limit may be higher than or less than the limits afforded in the policy for Bodily Injury Liability Coverage, but no less than the applicable Limits of Financial Responsibility. If this option is selected, fill in the desired limits below.
$________ Bodily Injury protection per person for one accident, and
$________ Bodily Injury protection for two or more people for one accident.
[] Option 3The insured may totally reject Coverage SS Uninsured Motorists Bodily Injury Insurance for this and subsequent policy or premium periods.
Appellant has expressly rejected UM coverage pursuant to Roger. The form identifies Mary Ann Johnson as the "Applicant or Insured" and includes a number identified as the "Application or Policy Number." The box to the left of Option 3 is checked. The one-page form is dated 7-21-92 and is signed by Johnson.
Appellant does not contest she signed the form and affixed the check in the option box providing for a rejection of UM coverage. Instead appellant challenges the specific language used in the option she selected, asserting it is equivocal and ambiguous and, therefore, not a valid rejection of UM coverage. Appellant contends there has been no affirmative and unambiguous specific rejection of coverage. Appellant argues because the form uses the word "may," it neither chooses coverage nor rejects it. Appellant asserts "may" expresses a contingency, and the form merely anticipates some other writing will either actually reject UM coverage or choose UM coverage.
In Henson, the supreme court found the insured's signing of a general application for insurance did not constitute a valid rejection of UM coverage, where the insured did not mark a rejection box regarding UM coverage or initial the mark rejecting coverage, the mark rejecting coverage was completed in advance by the insurance agent, and the rejection was inconspicuously located within the policy. The court found there was no express, affirmative act by the insured which clearly, unambiguously and unmistakably rejected UM coverage as required by La.R.S. 22:1406D(1)(a). Henson, 585 So.2d at 539-540. Subsequently, in Nelson v. Ragan, 26,724 (La.App. 2d Cir. 4/5/95); 653 So.2d 185; writ denied, 95-1161 (La. 6/16/95); 655 So.2d 332, the court concluded an insured had validly rejected UM coverage where the insured had signed a separate UM rejection form, although the insured alleged the form had been filled out by the insurance agent prior to being presented to him for his signature and there had been no verbal explanation of UM coverage options. The court rejected *349 the insured's contention that he had not affirmatively acted to reject UM coverage, stating a person who signs a written document is presumed to have knowledge and understanding of that which he signs. Nelson, 26,724 at 5; 653 So.2d at 188. The court found the "elect to reject" form complied with the mandates of Henson and Tugwell, which require the applicant to be given an opportunity to make a meaningful selection from the statutory options. Nelson, 26,724 at 6; 653 So.2d at 189. The court determined the insured's signature on the "separate and plainly readable rejection form" constituted an affirmative rejection of UM coverage.
In the present case, the UM selection form is a separate form which requires the insured's signature. It clearly sets forth the three options provided by the UM statute and addressed in Tugwell, i.e., 1) UM coverage equal to bodily injury limits in the policy, 2) UM coverage lower than bodily injury limits in the policy, or 3) no UM coverage. Tugwell, 609 So.2d at 197. We find the language of the form is not confusing or misleading.
Johnson does not contest her signature or that she affixed the check mark selecting Option 3. The form instructs the insured to check the box of the option desired. By affixing the check in the box next to Option 3, the insured designated her desire to reject UM coverage and, thereby, affirmatively acted to reject UM coverage. Under the clear terms of the policy form, Johnson rejected UM coverage. Johnson does not contend she did not read or understand the form. She does not allege she signed the UM form in error or was induced to sign by fraud or duress. The trial court correctly concluded the rejection of UM coverage was valid.

IV. CONCLUSION
There are no genuine issues of material fact, and Allstate is entitled to summary judgment as a matter of law. The trial court did not err in granting Allstate's motion for summary judgment. Accordingly, the trial court's judgment is affirmed. Costs of this appeal are to be paid by plaintiff-appellant, Mary Ann Johnson.
AFFIRMED.
NOTES
[1] Since an underinsured vehicle and an uninsured vehicle are each considered to be an "uninsured motor vehicle" pursuant to La.R.S. 22:1406D(2)(b), we address the underinsured motorist coverage claimed by plaintiff as uninsured motorist coverage.
[2] The parties apparently do not dispute the Allstate policy was in effect when the accident occurred.
[3] Although the stipulated facts address the substitution of the vehicles insured under the Allstate policy, plaintiff does not contend the waiver was invalid due to the vehicle substitution. We note the law does not require the execution of separate UM selection forms for renewal or substitute policies. La.R.S. 22:1406D(1)(a); also see Tully v. Liberty Mutual Fire Ins. Co., 516 So.2d 435, 439 (La.App. 1st Cir.1987).