677 So.2d 599 (1996)
Kimberly WASHINGTON, Plaintiff-Appellant,
v.
IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, Defendant-Appellee.
No. 28434-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*600 Wilson & Stephens by David Paul Wilson, Shreveport, for Plaintiff-Appellant.
Andrus & Doherty by Alex L. Andrus, III, Opelousas, for Defendant-Appellee.
Before MARVIN, C.J., and STEWART and BROWN, JJ.
MARVIN, Chief Judge.
Kimberly Washington appeals a summary judgment in favor of the liability insurer of her mother's automobile that upheld her mother's signed rejection of UM coverage under La.R.S. 22:1406.
We reverse the summary judgment and remand.

DISCUSSION
Ms. Washington, a passenger on a city bus in Shreveport, was injured when an automobile negligently driven by Tanyika LaCour collided with the bus. After Ms. LaCour's liability insurer paid the limits of its bodily injury liability coverage, Ms. Washington alleged that her mother had not validly rejected the underinsured or UM coverage provided by La.R.S. 22:1406. The mother's liability policy with Imperial Fire and Casualty Insurance Company also insured Ms. Washington, a resident of her mother's household.
The defendant insurer moved for summary judgment, supported only by the liability policy which included the application containing the UM rejection paragraph purportedly signed by Ms. Washington's mother. Importantly, we have no detailed affidavits about the signing of the rejection form or other documentary support for or against summary judgment detailing what transpired between the agent and the insured when the form was signed. We append a copy of the UM "options" form in question to this opinion.
The first page of the application in question contains, among other information, a listing of various types of coverages in the left-hand column with "Limits of Liability" on the right. Boxes accompany the dollar amounts. Only two of the nine available boxes have been checked: the first checked box indicates a $10,000 limit for each person and a $20,000 limit for each accident for bodily injury liability [the minimum allowed by law]; the second check indicates a $10,000 limit for each accident with respect to property damage liability. All the other boxesUM coverage, medical payments, comprehensive and collisionare simply not checked at all.
A motion for summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there are no genuine issues of fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966. Appellate courts review summary judgments de novo under the same criteria that govern the trial court. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991).
*601 Pronouncing public policy, La.R.S. 22:1406 must be liberally construed to provide coverage, while statutory exceptions to the coverage requirement must be interpreted strictly. Carter v. Baham, 94-2809 (La. 1/27/95), 649 So.2d 967; Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). The insured must be given three options: (1) UM coverage equal to the bodily injury limits in the policy, (2) UM coverage lower than those limits [if the liability limits exceed the minimum amounts], or (3) no UM coverage. A rejection form that forecloses any of these options may not satisfy the statute. Id. When the bodily injury liability coverage selected is the minimum allowed by law, there is no UM coverage legally available in a lower amount, and the insurer need not offer the applicant the non-existent option of lower UM limits. West v. Louisiana Indemnity Co., 26,845 (La.App.2d Cir. 4/5/95), 653 So.2d 194, writ denied, 95-1099 (La. 6/16/95), 655 So.2d 337; Morgan v. Sanchez, 94-0090 (La. App. 1st Cir. 4/15/94), 635 So.2d 786.
Because Ms. Washington's mother selected the minimum liability coverage, the UM option form had to provide her with two options: (1) UM coverage equal to bodily injury limits in the policy; or (2) no UM coverage.
Moreover, the application must present the insured with a separate or conspicuous rejection form that advises the applicant of his or her options regarding UM coverage and requires that the applicant consciously and affirmatively reject UM coverage, such as by checking the rejection box or by initialing or signing the rejection. Henson v. Safeco Ins. Cos., 585 So.2d 534 (La. 1991); Nelson v. Ragan, 26,724 (La.App.2d Cir. 4/5/95), 653 So.2d 185, writ denied, 95-1161 (La. 6/16/95), 655 So.2d 332.
On this record, we must find that summary judgment is inappropriate because the liability insurance application in question allowed Ms. Washington's mother only the one option of rejecting UM coverage that is provided by the statute. The form does not suggest that Ms. Washington's mother would have the protection of UM coverage at the minimum liability coverage amounts if she did not reject the UM coverage [you have UM coverage unless you reject it]. Compare Banks v. Patterson Ins. Co., 94-1176 (La.App. 1st Cir. 9/14/95), 664 So.2d 127, writ denied, 95-2951 (La. 2/16/96), 667 So.2d 1052; and Guilbeau v. Gabriel, 553 So.2d 1078 (La.App. 3d Cir. 1989), writ denied, 559 So.2d 138 (1990). See also C.J. Marvin's concurring opinion in Pine v. Doolittle, 28,141 (La.App.2d Cir. 6/26/96), 677 So.2d 686.
The UM option form presented to Ms. Washington offered only the rejection of UM protection "as provided in Louisiana Revised Statutes 22:1406." Nothing in this record describes the manner in which the options were explained to Ms. Washington or the method by which the application form was prepared (whether a printed paper-blank form or a computer generated form, completed by the insured's answers to questions and then printed for signature) and was presented to her to sign. Compare Pine v. Doolittle, supra.
In some cases where the issue of UM rejection or acceptance is resolved, not on motions for summary judgment, but after a trial on the merits, the evidence may preponderate that the agent and the manner in which the form was completed and signed either did or did not fully inform the insured of the two or three UM options, as the case may be. Carter, supra, was such a case. There the court held that the appellate court could not reverse the factual finding of the trial court that UM coverage was not validly rejected, absent a finding of manifest error.
The first page of an insured's application, which includes, among other information, columns and boxes affecting each type of coverage, does not "cure" a facially defective UM options paragraph or provision. We are directed, especially in summary judgment cases, to look at the separate or conspicuous rejection form to aid our determination of whether the applicant was properly informed of the legal options available. Henson v. Safeco Ins. Cos., supra.

CONCLUSION; DECREE
On this record, we conclude the trial court erred in granting the insurer's motion for *602 summary judgment upholding the UM rejection when facially that was the only option offered Ms. Washington's mother.
Being supported only by the application form, the summary judgment is reversed at the cost of appellee and the matter is remanded for further proceedings.
REVERSED AND REMANDED.
BROWN, J., concurs with reasons.

*603 BROWN, Judge, concurring.
In Louisiana, uninsured motorist coverage is provided for by statute and embodies a strong public policy. La.R.S. 22:1406. The object is to promote full recovery for innocent automobile accident victims when the party at fault has no insurance or is inadequately insured. To effectuate this public policy, the law mandates that all automobile liability insurance policies include UM coverage unless specifically rejected by the insured. Any such rejection of UM coverage by the insured must be clear, unmistakable and follow a recitation on the form of all available options. In Tugwell v. State Farm Ins. Co., supra, the supreme court stated:
In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options. (Emphasis added).
In Carter v. Baham, supra, the supreme court stated:
Thus, on its face, the form signed by plaintiff did not meet the requirements of Tugwell for a valid rejection of UM coverage because it failed to inform plaintiff of one of his options regarding UM coverage...
USAA was unable to produce evidence to support its assertion that plaintiff received additional documents which fully informed him of all of his UM coverage options, relying instead on the testimony of its employees. (Emphasis added).
In Banks v. Patterson Insurance, supra, the First Circuit stated:
In view of this defect (the form did not provide the option to accept UM coverage), we need not address the question of being sufficiently "informed" of the available options.
The reason for requiring that all options be presented on the face of the form and that rejection be in writing is to avoid swearing matches and to promote the public policy favoring uninsured/underinsured motorist coverage. What happens if the insured is killed in the accident? In such a case, under the majority opinion, an insurance agent can testify, without contradiction, that although the requisite options do not appear on the form, they were verbally explained.
In this case there is no claim that additional "documents" exist which would show that the insured was fully informed of her choices. Thus, either the rejection form properly provided the options required by law or it did not. If it did not, then as in Banks, we need not address the question of whether the insured was sufficiently "informed of the available options."
The critical inquiry is first whether the rejection form provided by the insurer complies with statutory requirements. If not, as in this case, then UM coverage is mandated by law. If the form does meet the requisites of law, then the second inquiry is whether the insured made an "informed" rejection or merely signed as directed by the agent. See Dugas v. Benoit, 95-1653 (La.App. 3d Cir. 05/31/96), 677 So.2d 530.
Therefore, while agreeing with the majority view that the form provided by the insurance company was defective and that the matter should be remanded for trial, I disagree that testimony should be allowed on whether or not the agent fully inform the insured of her choices.