11 GASKINS, J.
The defendant, Coregis Insurance Company, appeals from a trial court decision granting summary judgment in favor of the plaintiff, finding that the Winn Parish School Board failed to properly execute its choice of reduced uninsured/underinsured motorist coverage with Coregis. For the following reasons, we affirm the trial court judgment.
FACTS
On October 30, 2002, five-year-old Tristan Matthew Garrett was crossing Highway 167 in Winn Parish to board a school bus when he was struck and injured by a vehicle driven by a minor. According to the plaintiff, the school bus was headed north on the road and had stopped and activated its warning signals; the minor driver was traveling south and failed to heed the warnings.
On October .23, 2003, Delores McFarland, individually and on behalf of Tristan, filed a petition for damages.[1] The petition named as defendants the minor driver; her father, Monty D. Carpenter; Southern Farm Bureau Casualty Company, in its capacity as the insurer of the Carpenters; Louisiana Farm Bureau Casualty Insurance Company as the underinsured/unin-sured motorist (UM) carrier for Ms. McFarland; and Winn Parish School Board (WPSB) and its insurer, Coregis Insurance Company (Coregis). The Carpenters’ insurer, Southern Farm Bureau, tendered the policy limits; Southern Farm Bureau and the Carpenters were released from the suit.
|aMs. Smith filed a motion for summary judgment against Coregis as the UM carrier for the Winn Parish School Board (WPSB). She alleged that Coregis issued a policy of insurance to WPSB for the period of July 1, 2002 to July 1, 2003. Ms. Smith acknowledged a resolution executed *1209 by the WPSB for lower limits on UM insurance. However, she alleged that no valid execution or selection of lower limits has ever been made by the WPSB or anyone on its behalf.
Ms. Smith contended that the selection of lower UM limits was invalid because it was not done on a form prescribed by the Louisiana Commissioner of Insurance. She maintained that Coregis used its own form which was not valid under the applicable Louisiana statutes.[2] She argued that this statute provides that after September 6, 1998, rejection of coverage can be made only on a form provided by the commissioner of insurance. According to her, the liability limits .of the policy were $1,000,000 per occurrence and she asked for summary judgment to that effect. •
Oh June 22, 2004, Coregis filed a motion for summary judgment in its capacity as the UM carrier for WPSB. It claimed that the school board validly selected lower limits of UM coverage. According to Coregis, the UM policy limit is $25,000. It tendered this amount as well as $5,000 in medical payments. Coregis sought a summary judgment finding that it had fulfilled its obligations under the policy.
|aThe court denied summary judgment in favor of Coregis and granted summary judgment in favor of the plaintiff. A judgment to that effect was executed on August 13, 2004. In its reasons, the court noted that the reduction of policy limits for UM coverage was not properly accomplished and therefore was invalid.
Coregis appealed. It asserts that the issues posed in this appeal are whether WPSB’s selection of the lower limits was valid and enforceable, whether statutory law recognizes as valid only a selection made on a form drawn up by the- commissioner of insurance, and whether the insurer, who had to offer further limitations on coverage for school buses, which were not included on the commissioner’s form, could validly create its own form. According to Coregis, the UM selection/rejection form used in this case validly limited UM coverage to $30,000, an amount lower than the policy’s bodily injury limits of $1,000,000.
LEGAL PRINCIPLES
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). The issue of whether an insurance policy, as a matter of law, provides or precludes coverage is a dispute that can be resolved properly within the framework of a motion, for summary judgment. Johnson v. Allstate Insurance Company, 95-1953 (La.App. 1st Cir.5/10/96), 673 So.2d 345, writ denied, 1996-1292 (La.6/28/96), 675 So.2d 1126. Summary judgment declaring a lack of coverage |4under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion,- under which coverage could be afforded. Westerfield v. LaFleur, 493 So.2d 600 (La.1986).
An insurance policy is a contract between the parties and should be construed using ordinary contract principles. Smith v. Matthews, 611 So.2d 1377 (La.1993). The parties’ intent, as reflected by the words of the policy, determine the extent of coverage. Louisiana Insurance *1210 Guaranty Association v. Interstate Fire & Casualty Company, 93-0911 (La.1/14/94), 630 So.2d 759. An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180. However, if after applying the other rules of construction an ambiguity remains, the ambiguous provision is to be construed against the drafter and in favor of the insured. Louisiana Insurance Guaranty Association v. Interstate Fire & Casualty Company, supra; Reynolds v. Select Properties, Ltd., supra; Adams v. Thomason, 32,728 (La.App. 2d Cir.3/1/00), 753 So.2d 416, unit denied, 2000-1221 (La.6/16/00), 764 So.2d 965.
VALIDITY OF UM SELECTION/REJECTION FORM
Coregis argues that the selection of lower UM limits by the WPSB was valid and enforceable and that the trial court erred in finding otherwise. We find this argument to be without merit.
IsCoregis began insuring WPSB in July 2000. According to Coregis, there is no dispute that WPSB intended to select lower UM limits. A resolution was adopted by WPSB on June 4, 2001, authorizing the superintendent of the school board to sign the UM form reflecting a selection of lower UM limits of $30,000 bodily injury and $10,000 property damage. A UM selection/rejection form to this effect was executed on June 5, 2001. Coregis urges that the policy for the year 2002-2003 was a renewal of the policy from the previous year and the UM selection executed in 2001 remained in effect.[3]
The law requires UM coverage in not less than the limits of bodily injury liability provided by the policy. However, an insured can reject UM coverage or select lower limits if he does so in writing. Tugwell v. State Farm Insurance Company, 609 So.2d 195 (La.1992). At one point, the law required that the selection/rejection choices regarding UM coverage were to be made only on a form designed by each insurer. The court in Tugwell held that the form used by the insurance company must give the applicant the opportunity to make a meaningful selection from his options provided by the statute at that time: (1) UM coverage equal to bodily injury limits in the policy, (2) UM coverage lower than bodily injury limits in the policy, or (3) no UM coverage. The Tugwell court stated that a rejection on a form that prohibits the insured from choosing limits below liability | (¡coverage or which automatically chooses a certain lower amount for the insured does not meet the statutory requirements because it forecloses options available to the insured by law.
Acts 1997, No. 1476, § 3, effective September 6, 1998, enacting the “Omnibus Premium Reduction Act of 1997,” changed the UM statute to provide that the insured may either select UM coverage in an amount equal to the bodily injury limits of the policy, may select lower limits, may select economic-only coverage, or may reject UM coverage. La. R.S. 22:1406(D)(l)(a)(i) specified:
No automobile liability insurance covering liability arising out of the ownership, *1211 maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless .coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item D(l)(a)(ii) of this Subsection. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute jjolicy when the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract. Insurers may also make available, at a reduced premium, the coverage provided under this Subsection with an exclusion for all 17noneconomic loss. This coverage shall be known as “economic-only” uninsured motorist coverage. Noneco-nomic loss means any loss other than economic loss and includes but is not limited to pain, suffering, inconvenience, mental anguish, and other noneconomic damages otherwise recoverable under the laws of this state.
The UM statute embodies strong public policy and is to be liberally construed in favor of coverage, such that statutory exceptions to the UM coverage requirements are interpreted strictly. Richardson v. Lott, 2003-0189 (La.App. 1st Cir.11/7/03), 868 So.2d 64, writ denied, 2003-3324 (La.2/13/04), 867 So.2d 707. The object of such coverage is to provide full recovery for automobile accident victims who suffer damages caused by a tortfeasor who is not covered by adequate liability insurance. Henson v. Safeco Insurance Companies, 585 So.2d 534 (La.1991).
The insurer bears the burden of proving an insured named in the liability policy rejected in writing UM coverage equal to the bodily injury limits contained in the policy or selected lower limits. Henson v. Safeco Insurance Companies, supra. If rejection of UM coverage is ambiguous, it is ineffective, regardless of the parties’ intent. Richardson v. Lott, supra.
The form prescribed by the commissioner of insurance provides an insured the following options regarding UM coverage:
(1) I select UMBI [uninsured/underin-sured motorist bodily injury] Coverage which will compensate me for my economic and non-economic losses with the same limits as my Bodily Injury Liability Coverage.
Economic losses are those which can be measured in specific monetary terms including, but not limited to, medical costs, funeral expenses, lost wages, and out of pocket expenses.
*1212 Non-economic losses are losses other than economic losses and include, but are not limited to, pain, suffering, inconvenience, and mental anguish.
|s(2) I select UMBI Coverage which will compensate me for my economic and non-economic losses with limits lower than my Bodily Injury Liability Coverage-limits:
$_ each person $_ each accident
(3) I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with the same limits as my Bodily Injury Liability Coverage.
(4) I select Economic-Only UMBI Coverage which will compensate me only for my economic losses with limits lower than my Bodily Injury Liability Coverage limits:
$_each person $_each accident
(5) I do not want UMBI Coverage. I understand that I will not be compensated through UMBI coverage for losses arising from an accident caused by an uninsured/underinsured motorist.
These options are set forth on a form on which the insured is to designate the choice by initialing the relevant option.
The form used in the present case, and drafted by Coregis, informed the insured of the following options:
By law, you, the insured have the following options concerning the policy:
1. Maintain uninsured motorist bodily injury coverage at the same limits as the bodily injury liability limit of the policy;
2. Reject uninsured motorist bodily injury coverage;
3. Reject uninsured/underinsured motorist bodily injury and property damage coverage;
4. Select uninsured/underinsured bodily injury coverage at lower limits that the limits of the bodily injury liability limits of the policy but in no event less than the financial responsibility require'ments of this state; or
5. Select uninsured motorist property damage in an amount of the actual cash valué of your motor vehicle described in this policy or ten thousand dollars, whichever is less subject to a deductible of two hundred fifty dollars for any one accident. This coverage is provided only in the event your vehicle(s) described in this policy is (are) not insured under your collision coverage.
| flBecause the policy provided coverage for school buses, the form also included the following paragraph:
Also since the policy provides coverage for a school bus, you may limit the scope of uninsured motorists liability to only provide liability coverage for damages incurred by reason of an accident or incident involving the school bus or temporary substitute vehicle and such limi- . tation shall limit the uninsured motorist ..coverage for you in the policy to only damages incurred by reason of such accident or incident.
This provision tracks the language of La. R.S. 22:1406(D)(l)(a)(iv), which provided:
Notwithstanding any contrary provision of this Section, an automobile liability policy written to provide coverage for a school bus may limit the scope of uninsured motorist liability to only provide liability coverage for damages incurred by reason of an accident or incident involving the school bus, or a temporary substitute vehicle, and such limitation shall limit the uninsured motorist coverage of a named insured in the policy to only damages incurred by reason of such accident or incident.
*1213 However, the portion of the Coregis form allowing the insured to make a selection from the relevant options, by initialing the appropriate blank, did not include all the relevant choices. Further, it contained no mention of the option regarding school buses. The relevant portion of the form provided as follows:
_ We select uninsured motorists/
initials underinsured motorists coverage equal to the policy limits; OR
_ We select uninsured motorist property
initials damage in the amount of the actual cash value of the motor vehicle described in my policy or $10,000, whichever is less, subject to a $250 deductible for any one accident.
_ We select Protection Against
initials Uninsured/Underinsured Motorists
Coverage on owned and non-owned motor vehicles at the following limits which are lower than the bodily injury limits of the policy when we, or any other insured, are in any other vehicle.
ImSplit Limits of Liability
_ 10/20 50/100
_ 15/30 100/300
__ 20/40 250/500
_ 25/100 500/1000
_ 30/10
OR
Single Limits of Liability
._ 20,000 300,000
__ 25,000 350,000
_ 50,000 500,000
_ 100,000 1,000,000
OR
__ We hereby reject in its entirety
initials Protection Against Uninsured Motorists/underinsured motorists coverage and agree that uninsured motorist coverage afforded in the policy is deleted.
The WPSB selected the option specifying “We select Protection Against Uninsured/Underinsured Motorists Coverage on owned and non-owned motor vehicles at the following limits which are lower than the bodily injury limits of the policy when we, or any other insured, are in any other vehicle.” Split limits of “30/10” were selected.[4]
Not only did the Coregis form fail to provide all the relevant options in a way in which the insured could make a meaningful selection, the option selected is ambiguous. The language of the chosen option does not comport with the statute and the meaning of “any other vehicle” is entirely obscure. Although Coregis argues that it was required to draft its own form due to the absence of a school bus provision in the form prescribed by the |1¶ commissioner of insurance, we see no reference to school buses in the options from which the insured was entitled to choose.
Because the form authored by Coregis does not comply with the statutory requirements for selecting or rejecting UM coverage, and because all relevant options were not listed and the option chosen is ambiguous, the trial court correctly found that the form was not valid and that UM coverage had not been properly limited in this matter. The trial court did not err in granting summary judgment in favor of the plaintiff and in denying the motion for summary judgment filed by Coregis.[5]
*1214 CONCLUSION
For the reasons stated above, we affirm the trial court decision granting summary-judgment in favor of the plaintiff, Tiffany Garrett Smith, individually and on behalf of Tristan Garrett, and rejecting the motion for summary judgment filed by the defendant, Coregis Insurance Company. All costs in this court are assessed to the defendant.
AFFIRMED.

. At the time of the accident, Tristan apparently lived with Ms. McFarland. On February 19, 2004, Tiffany Garrett Smith, the child's mother, was appointed natural tutrix of the child and was authorized to retain counsel to prosecute this case on behalf of the Tristan. She was substituted as the plaintiff in this matter.

. At the time of this accident, the .provisions concerning UM coverage were set forth in La. R.S. 22:1406(D). Pursuant to Acts 2003, No. .456, § 3, that-statute has been redesignated as La. R.S. 22:680.

. The plaintiff argued that the 2002-2003 policy was not a renewal and required that a new UM selection/rejection form be executed. This was not done. Under the plaintiff’s theory, failure to execute a new waiver would result in UM coverage at the same amount as the bodily injury limits. ,We pretermit that issue finding that, even under Coregis’ position that the waiver was in effect at the time of the accident, the waiver was not valid.

. Even though the declaration page of the policy in effect at the time of this accident indicates that the UM policy limit was $25,000, and even though that is the amount that was tendered to the plaintiff, Coregis, in its brief maintains that the UM limit selected was $30,000. There is no showing that any other UM selection/rejection form was executed that would be applicable to this matter which selected lower limits.

. Because we find that the form was invalid due to failure to provide the insured with a viable means of signifying a selection from the relevant choices regarding UM coverage, we do not at this time make a ruling on the issue of whether, in all circumstances, the use of the form prescribed by the commissioner of insurance is the sine qua non of validity for a UM selection/rejection form.